**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THOMAS H. ASKINS, JR., et al.** | ) | |
| | ) | |
| **For themselves and on behalf of a class Of those who are similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 07-650L** |
| | ) | **Honorable Victor J. Wolski** |
| **v.** | ) | |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFFS' SUR-REPLY**
**TO DEFENDANT'S REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS OR,**
**ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Martin E. Wolf
Kieron F. Quinn
Cory L. Zajdel
QUINN, GORDON & WOLF, CHTD.
102 West Pennsylvania Avenue
Suite 402
Towson, MD 21204
(410) 825-2300
(410) 825-0066 fax

Kristen D. Hofheimer
Charles R. Hofheimer
Jack E. Ferrebee
HOFHEIMER/FERREBEE, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200

Thomas Shuttleworth
Stephen C. Swain
Charles Lustig
SHUTTLEWORTH, RULOFF, SWAIN, HADDAD & MORECOCK
4525 South Boulevard, Suite 300
Virginia Beach, Virginia 23452
(757) 671-6000

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ....................................................................................................1

ARGUMENT

1. The John R. Sand Opinion has No Impact on the American Pipe Tolling Doctrine ....................................................2

A. Introduction ....................................................................................2

B. American Pipe Applies to Statutes of Repose ....................................5

C. Class Actions in This Court Have the Force of Law ..........................12

2. "Evidence" of Prejudice is Untimely ..................................................15

CONCLUSION .....................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*American Pipe and Const. Co v. United States,* 414 U.S. 538 (1974).................................passim

*Andrews v. Chevy Chase Bank, FSB,* 243 F.R.D. 313 (E.D. Wisc. 2007)............................10

*Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420 (10th Cir. 1991).......................................8

*Ballard v. Tyco International, Ltd.,* 2005 WL 1683598 (D. N.H. Jul. 11, 2005) .................10

*Barbieri v. United States,* 15 Cl.Ct 747 (1988)......................................................................14

*Dye v. Ameriquest Mortgage Co.,* 2007 WL 4418195 (E.D. Wisc. Dec. 17, 2007) .............11

*Finn v. United States,* 123, U.S. 227 (1887) ..........................................................................4

*In Re Discovery Zone Securities Litigation,* 181 F.R.D. 582 (N.D. Ill. 1998) ......................8

*In Re Enron Corporation Securities*, 465 F.Supp.2d 687 (S.D. Tex. 2006).........................10

*Irwin v. Dept of Veterans Affairs,* 498 U.S. 89 (1990) .........................................................4

*John R. Sand & Gravel Co. v. United States,* 457 F.3d 1345, (Fed. Cir.)
*aff'd* __ U.S. __, 128 S.Ct. 750, 2008 WL 65445 (January 8, 2008).................................passim

*Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000)....................................................................8, 10

*Kendall v. United States,* 107 U.S. 123 (1883)......................................................................4

*Klamath and Modoc Tribes v. Unites States,* 174 Ct.Cl 483 (1966) ....................................14

*Lampf, Pleva, Lipkind, Pluva, & Petigrow v. Gilbertson,*
501 U.S. 350 (1991).................................................................................................passim

*Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990) ............................................................16

*Menominee Tribe of Indians v. United States,* 388 F.2d 998, 179 Ct.Cl. 496 (1967)
*aff'd* 391 U.S. 404, 88 S. Ct. 496 (1968) ...............................................................................13

*Mott v. R.G. Dickinson and Co.,* 1993 WL 63445 (D. Kan. Feb. 24, 1993)..........................7

*Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman,*
277 B.R. 20 (S.D.N.Y. 2002).................................................................................................10

Page(s)

*Quinault Allottee Ass'n v. United States,* 197 Ct.Cl 134, 453 F.2d 1272 (1972) ..................14

*Salkind v. Wang,* 1995 WL 170122 (D. Mass. Mar. 30, 1995)............................................7, 10

*Soriano v. United States,* 352 U.S. 270 (1957)....................................................................4

*Stone Container Corp. v. United States*, 229 F.3d 1345 (Fed. Cir. 2000)............................12

*Stump v. Gates,* 211 F.3d 527 (10th Cir. 2000) ...................................................................16

*Western Cherokee Indians v. United States*, 27 Ct.Cl. 1 (1891)
*aff'd sub nom, United States v. Old Settlers*, 148, U.S. 427 (1893)....................................13

**Statutes**

Rules Enabling Act, 28 U.S.C. § 2071 *et seq*. ...........................................................................12

Securities and Exchange Act of 1934, 15 U.S.C. § 78j .......................................................5

Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. .................................................................11

Tucker Act, 28 U.S.C. § 1497.........................................................................................passim

**Rules**

Fed.R.Civ.P. 23 ...............................................................................................................14, 16

RCFC 23 ...............................................................................................................................14

SEC Rule 10b-5, 17 CFR § 240.10b-5 (1990)......................................................................5

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **THOMAS H. ASKINS, JR., et al.**<br><br>**For themselves and on behalf of a class Of those who are similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 07-650L**<br>**Honorable Victor J. Wolski** |

**PLAINTIFFS' SUR-REPLY**
**TO DEFENDANT'S REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS OR,**
**ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Plaintiffs, by and through their undersigned counsel, submit this sur-reply in opposition to the motion to dismiss or, alternatively, for summary judgment filed by the Defendant.

**INTRODUCTION**

This sur-reply addresses two issues raised by the Government in the reply memorandum filed in support of its motion, namely: (1) What impact, if any, does the recent Supreme Court decision in *John R. Sand & Gravel Co. v. United States*, ___ U.S. ___, 128 S.Ct. 750, 2008 WL 65445 (January 8, 2008) have on the doctrine established in *American Pipe and Const. Co. v United States*, 414 U.S. 538 (1974); and (2) Can the Government present evidence of "prejudice" in support of summary judgment in a reply memorandum?

The *John R. Sand* opinion does not break new ground. Indeed, the opinion itself states that the decision is consistent with prior opinions dating back to the 19th century. Moreover, the issues in *John R. Sand* did not include the effect of a prior class action on the timing of

subsequent claims. It does not mention *American Pipe* in the opinion and does not address the *American Pipe* situation or analysis at all. In short, *John R. Sand* has no impact on the issues presented in the present case.

The Government's effort to bootstrap an implied overruling of *American Pipe* into the *John R. Sand* opinion - despite the fact that *American Pipe* is not even mentioned in the opinion itself - is ineffective. To do this, the Government attempts to characterize *American Pipe* as "equitable tolling," which it is not. A significant number of courts have analyzed that very issue and determined that *American Pipe* is an example of legal tolling, if it is "tolling" at all.

Finally, Defendant identifies for the first time in its reply memorandum the prejudice it will allegedly suffer: a necessary element of its laches defense. First, the claim of prejudice is not properly supported under RCFC 56. Second, it is improper to present new evidence in a reply memorandum. Third and finally, the Government will not be prejudiced as alleged.

## ARGUMENT

### 1.

### The *John R. Sand* Opinion has No Impact On the *American Pipe* Tolling Doctrine

#### A. Introduction

*John R. Sand* did not involve a prior class action and what effect, if any, that would have on a subsequently-filed case. There, a property leased by *John R. Sand* was the subject of an EPA cleanup program. Over the course of a period of years, the EPA took various actions, such as erecting fences, drilling wells and limiting access to portions of the leased property. The John R. Sand & Gravel Company, the lessee, sued for inverse condemnation. In this Court, the Government asserted limitations as a defense, claiming the taking, if any, was more than six years prior to the filing of the complaint. Subsequently, the Government conceded that certain

claims were timely. The Court held that one part of the taking claim, the part based on drilling wells, occurred more than 6 years prior and was barred by limitations. As to the other claims, the Court held that they were timely, but held for the Government on the merits. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1349-51 (Fed. Cir. 2006).

On appeal, the Government did not raise a challenge to this Court's holding that the claims were timely. That issue was raised by an amicus, the Metamora Group, twelve corporations that entered into a consent decree with the EPA and had agreed to indemnify the Government for any compensation it may have to pay to the property owner. 457 F.3d at 1353 n. 9. The Government, for its part, conceded that the taking, if any, accrued at a later date and therefore, that the claims were timely. The Federal Circuit, *sua sponte*, held that the claims were untimely. The issue before the Court was the date the claims accrued. 457 F.3d at 1356. No one raised either the issue of waiver or of equitable tolling, and it was not addressed by the Court.

Before the Supreme Court, the sole issue was:

> The question presented is whether a court must raise on its own the timeliness of a lawsuit filed in the Court of Federal Claims, despite the Government's waiver of the issue. We hold that the special statute of limitations governing the Court of Federal Claims requires that *sua sponte* consideration.

128 S.Ct. at 752. Although suggested by the Court, the Government never actually waived limitations. Moreover, the Petitioner did not argue that limitations had been waived. The argument centered on the date that the cause of action accrued. The Court's discussion regarding waiver and equitable tolling was superfluous to the issues in the case, and thus, dicta. Therefore, it is impossible to say with any certainty exactly what the Court meant when it used the term "equitable tolling."

In any event, the Supreme Court broke no new ground in holding that so-called "jurisdictional"[1] statutes of limitation or repose are not subject to waiver or equitable tolling. Indeed, that general proposition has been the law for a significant time.[2] *See Kendall v. United States*, 107 U.S. 123 (1883); *Finn v. United States*, 123 U.S. 227 (1887); *Soriano v. United States*, 352 U.S. 270 (1957). The *John R. Sand* opinion itself is not remarkable in relation to the issues in the present case. What is remarkable is the Defendant's present assertion that the *American Pipe* rule is the "equitable tolling" that the *John R. Sand* Court disapproved. This is a particularly difficult position to sustain given the fact that *John R. Sand* never mentions *American Pipe*.[3] Indeed, the *John R. Sand* Court itself acknowledged that courts do not normally overturn cases "without mentioning the matter." 128 S.Ct. at 756. It is not as if *American Pipe* is an obscure opinion. It is a significant, if not landmark, decision that has been cited by courts 1,127 times, and by administrative agencies 13 times, in its 34 year history (nearly 3 times per month, every month).[4] If the Court had intended to overrule *American Pipe*, it is inconceivable that it would not at least mention the case by name.

---

[1] The Court, apparently recognizing that use of the term jurisdictional, was a misnomer, noted that the term "jurisdictional" is used only as a "convenient shorthand" to refer to statutes that are "more absolute" than regular run-of-the-mill limitations. Section 2501 has been interpreted as setting forth one of these more absolute kinds of limitations periods. *John R. Sand*, ___ U.S. ___, 128 S.Ct. at 753, 2008 WL 65445 *at 2-3 (January 8, 2008).

[2] Plaintiffs are mindful of the dissent in *John R. Sand*, in which Justice Stevens asserts that the Court overruled the early cases in *Irwin v. Dept of Veterans Affairs*, 498 U.S. 89 (1990). *See John R. Sand*, ___ U.S. ___, 128 S.Ct. at 757-58, 2008 WL 65445 *at 7-9 (January 8, 2008). Without commenting on the accuracy of that assertion, Plaintiffs have never pressed for equitable tolling in this case. Indeed, their position throughout is that *American Pipe* is not equitable tolling, rather to the extent it is "tolling" at all, it is an example of legal tolling.

[3] This is not surprising. Counsel has reviewed the briefs filed in the Supreme Court by the Petitioner, the Government and the Metamora Group, the amicus that alone raised the limitation argument, and *American Pipe* is not mentioned anywhere in their briefing either.

[4] The source of this data is Westlaw's Insta-Cite function.

### B. *American Pipe* Applies To Statutes of Repose

In a line of cases involving statutes of repose, *American Pipe* has been analyzed repeatedly and found not to be "equitable tolling" at all. Instead, courts have found it to be legal tolling and fully applicable to statutes of repose.[5] In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991), the Supreme Court established that the statute of repose in the Securities Exchange Act of 1934, 15 U.S.C, § 78j(b) and Securities Exchange Commission Rule 10b-5, 17 CFR § 240.10b-5 (1990) promulgated thereunder, are not subject to equitable tolling. Just like *John R. Sand*, *Lampf* also did not involve a previously-filed class action. The crux of the decision in *Lampf* is that Congress established the 3-year period of repose as part of the claim itself for securities fraud, and not just a defense to liability. As such it is inconsistent with equitable tolling. *Id*.

In *Lampf*, the law firm that organized seven Connecticut limited partnerships and provided various other legal services for the partnerships was sued by purchasers of some partnership units for securities fraud under Rule 10b-5. The partnerships were formed for the purpose of leasing computer hardware and software. The plaintiffs purchased limited partner units with the expectation that they would receive federal income tax benefits. The partnerships failed and the IRS notified the plaintiffs that it was investigating the partnerships. Ultimately, the IRS disallowed the claimed tax benefits because of overvaluation of partnership assets and lack of profit motive. 501 U.S. at 352.

The Plaintiffs filed their complaints some 6 to 7 years after purchasing their respective units, and some 3 ½ to 4 ½ years after receiving notice of the IRS investigation. 501 U.S. at 353.

---

[5] A statute of repose is analogous to a time limitation as part of the waiver of sovereign immunity for purposes of analyzing the present case. In both instances, whatever liability there may be on the merits of the claim, it is extinguished unless the case is filed within the requisite time. In that sense, they both differ from a statute of limitations, which may be raised as a defense to liability at the defendant's option.

The Supreme Court first established that the 1-year after discovery/3-year period of repose scheme set out by Congress in the statute was applicable.[6] Under this scheme, plaintiffs are limited in time to one year from the date they knew or should have known about the fraudulent statements (i.e. the discovery rule), but in no event could the claim be filed later than three years from the date the statements were made. The plaintiffs claimed the three-year period should be equitably tolled for the time it took to discover the cause of action. The Court emphatically declined to allow equitable tolling as it applies to statutes of repose:

> Finally, we address plaintiff-respondents' contention that, whatever limitations period is applicable to § 10(b) claims, that period must be subject to the doctrine of equitable tolling. Plaintiffs-respondents note, correctly, that "[t]ime requirements in law-suits . . . are customarily subject to 'equitable tolling.'" *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95, 111 S. Ct. 453, 457, 112 L.Ed.2d 435 (1990), *citing Hallstrom v. Tillamook County*, 493 U.S. 20, 27, 110 S.Ct. 304, 309, 107 L.Ed.2d 237 (1989). Thus, this Court has said that in the usual case, "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Bailey v. Glover*, 21 Wall. 342, 348, 22 L.Ed. 636 (1875); see also, *Holmberg v. Armbrecht*, 327 U.S. 392, 396-397, 66 S.Ct. 582, 584-585, 90 L.Ed. 743 (1946). ***Notwithstanding this venerable principle, it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1-and-3-year structure.***
>
> The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. ***The 3-year limit is a period of repose inconsistent with tolling.*** One commentator explains: "[T]he inclusion of the three-year period can have no significance in this context other than to impose an outside limit." Bloomenthal, The Statute of Limitations and Rule 10b-5 Claims: A Study in Judicial Lassitude, 60 U.Colo.L.Rev. 235, 288 (1989). See also ABA Committee on Federal Regulation of Securities, Report of the Task Force on Statute of Limitations

[6] In adopting the 1-year/3-year statutory scheme, the Court held that it was Congress' intention that the 3-year maximum period is sufficient for filing a claim in all circumstances. 501 U.S. at 361.

> for Implied Actions 645, 655 (1986)(advancing "the inescapable conclusion that Congress did not intend equitable tolling to apply in actions under the securities laws"). ***Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.***

501 U.S. at 363.

In the wake of *Lampf*, numerous courts have been called on to determine what effect, if any, a previously-filed class action would have on the time for filing a subsequent complaint beyond a statutory period of repose. Most of these cases are under the securities fraud provisions of Rule 10b-5, as *Lampf* itself was. A few cases are governed by the statute of repose in the Truth in Lending Act for recission of a loan. Uniformly, courts have held that the *American Pipe* doctrine is not "equitable tolling" but, if it is "tolling" at all, it is legal tolling. Many of these decisions are set forth below in chronological order beginning with the earliest.

- *Mott v. R.G. Dickinson and Co*., 1993 WL 63445 (D. Kan. Feb. 24, 1993). Plaintiffs, who were members of a putative class in a previously-filed case, sued a broker and its lawyers for securities fraud under Rule 10b-5, in part, more than 3 years after the alleged fraudulent statements were made. The lawyers argued that the claims against them were barred by the 3-year statute of repose, and it could not be equitably tolled under *Lampf*. The court held that *American Pipe* was legal tolling, not equitable tolling, but did not apply it to the facts of the case because the lawyers in the subsequently filed case were not defendants in the prior class action. 1993 WL 63445 * 4-5.

- *Salkind v. Wang*, 1995 WL 170122 (D. Mass. Mar. 30, 1995). A shareholder of Wang Laboratories, Inc. and member of a prior putative class sued several officers and directors for securities fraud under Rule 10b-5 for various misrepresentations as to the corporation's strength and future performance. The court acknowledged the holding in *Lampf* barring

equitable tolling of the 3-year period of repose, but applied *American Pipe* tolling to allow several claims to go forward:

> Although equitable tolling is inapplicable, *Lampf*, 501 U.S. at 363, *American Pipe* does toll the *Lampf* bar of repose for as many of Salkind's claims which are part of a class action against the same defendant(s) until the class is decertified or Salkind opts out.

1995 WL 170122 at * 3.

- *In Re Discovery Zone Securities Litigation*, 181 F.R.D. 582 (N.D. Ill. 1998). In a massive securities fraud action, McDonald's Corp. attempted to intervene after opting-out of a previously-filed class action. In holding that McDonald's was not time-barred from intervening, the court applied *American Pipe* to the 3-year period of repose:

> Defendants raise a new argument for the first time in their surreply to McDonald's intervention motion - that McDonald's is time-barred from intervening under the statute of repose applicable to securities fraud claims articulated in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363-64, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Notwithstanding that it is improper to raise new arguments in a surreply (or even a reply, for that matter), this argument is easily dismissed. ***Because McDonald's was part of the class until May 27, 1997, the statute of repose was legally tolled between the lawsuit's filing and this date.*** [citing *Crown, Cork & Seal, Co. v. Parker*, 462 U.S. 345, 353-54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), and *American Pipe*].

181 F.R.D. at 600 n. 11 (emphasis supplied).

- *Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000). The after-market purchaser of debentures filed a class action against various entities including corporate officers, directors, venture capitalists and others for securities fraud under Section 11 of the Securities Act of 1933.[7] The complaint was filed nearly 3 months after the 3-year repose period expired. The defendants, citing *Lampf* and *Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420, 1434-35 (10th Cir. 1991), argued that the 3-year bar of repose was absolute and could not be tolled. The Court, in the

[7] Section 11 has the same 1-year/3-year limitation period as claims under Rule 10b-5. *See* 223 F.3d at 1166.

course of clearly delineating the difference between equitable tolling and *American Pipe,* held that a previously filed class action preserved the claim under *American Pipe*:

> *Lampf* and *Anixter* are not relevant in the present context because the tolling that Mr. Joseph seeks is legal rather than equitable in nature. Equitable tolling is appropriate where, for example, the claimant has filed a defective pleading during the statutory period, [citation omitted], or where the plaintiff has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass, [citation omitted]. In contrast, the tolling Mr. Joseph claims is legal tolling that occurs any time an action is commenced and class certification is pending. [citation omitted]
>
> The Supreme Court addressed this type of tolling in [*American Pipe*], where it held in the context of a statute of limitation that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 553, 94 S.Ct. 756. The Court expanded this rule in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), to include putative class members who later seek to file independent actions. *See id.* at 353-54, 103 S.Ct. 2392 (statute of limitations remains tolled for all members of putative class until class certification is denied). *Lampf* did not overrule or even mention these cases, and we are not persuaded the three are incompatible. In fact, *Lampf* states that the "litigation … must be *commenced* within one year after the discovery of the facts constituting the violation and within three years after such violation," indicating that the commencement of the action is the event which triggers tolling. *Lampf,* 501 U.S. at 364, 111 S.Ct. 2773 (emphasis added).
>
> * * *
>
> Statutes of repose are intended to demarcate a period of time within which a plaintiff must bring claims or else the defendant's liability is extinguished. ***Here the claim was brought within this period on behalf of a class of which Mr. Joseph was a member. Indeed, in a sense, application of the American Pipe tolling doctrine to cases such as this one does not involve "tolling" at all. Rather, Mr. Jospeh has effectively been a party to an action against these defendants since a class action covering him was requested but never denied. [citation omitted].*** * * * Consequently, we conclude that *American Pipe* tolling applies to

> the statute of repose governing Mr. Joseph's action. (emphasis added).

223 F.3d at 1166-68.

- *Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20 (S.D.N.Y. 2002). The successor to GAF Corporation sought to dismiss the claims of creditors for injuries and wrongful death caused by exposure to asbestos products manufactured and distributed by GAF. Defendants moved to dismiss certain claims on the ground that they were not timely. The court, citing to *Joseph*, held that dismissal was not warranted under *Lampf* because the creditors were members of a prior putative class action and, the doctrine under *American Pipe*, as legal not equitable tolling, applied to statutes of repose. 277 B.R. at 31.

- *Ballard v. Tyco International, Ltd*., 2005 WL 1683598 (D. N.H. Jul. 11, 2005). Plaintiffs sued Tyco, its former officers and directors, in part for securities fraud under Rule 10b-5. The plaintiffs invoked *American Pipe* based on the fact that they were members of a prior putative class. Tyco moved to dismiss the complaints as untimely under the 3-year period of repose, claiming that *American Pipe* is "indistinguishable" from the "equitable tolling" prohibited in *Lampf.* The court rejected that argument finding *American Pipe* to be "legal tolling" not equitable tolling. *Ballard*, 2005 WL 1683598 at *6 (*citing Joseph*, *Asbestos Claimants* and *Salkind)*.

- *In Re Enron Corporation Securities*, 465 F. Supp. 2d 687 (S.D. Tex. 2006). Plaintiffs opted-out of a federal securities class action against Enron, and filed a second case in which they attempted to add new securities fraud claims to the state law claims in the original complaint. The court held that *American Pipe* tolling was legal, not equitable, tolling and therefore was not prohibited by *Lampf.* 465 F. Supp. 2d at 717.

- *Andrews v. Chevy Chase Bank, FSB*, 243 F.R.D. 313 (E.D. Wisc. 2007). Borrowers filed a class action against the bank for failure to make certain disclosures under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA"). Under TILA, a borrower may rescind a loan within 3 days, but if the lender fails to make the necessary disclosures, the period is extended to three years. After the three-year period has expired, the right to rescind is extinguished. After the class was certified, but while certification was on appeal, plaintiffs moved for a determination of whether the class action tolled the three-year right to rescind period. Recognizing that the three-year period is a statute of repose, and distinguishing the holding in *Lampf*, the court nevertheless held that *American Pipe* tolled the three-year recission period because it is legal tolling, not equitable tolling. 243 F.R.D. at 317.

- *Dye v. Ameriquest Mortgage Co.*, 2007 WL 4418195 (E.D. Wisc. Dec. 17, 2007). Plaintiffs filed an adverse action in bankruptcy against Ameriquest for recission based on inadequate disclosures under TILA. The case was dismissed because the action was filed outside the three-year period to rescind. The court found that *American Pipe* would have tolled the three-year period, but did not because the previously-filed complaint did not contain all the elements of a class action complaint. 2007 WL 4418195 at *4.

Indeed, *American Pipe* itself involved claims under Federal antitrust law, both the Sherman Act and Clayton Act, both of which have a statute of repose. The same argument was raised in *American Pipe* as in *Lampf*. The Supreme Court, however, held that a period of repose that is part of the substantive liability could be tolled. The critical question is "whether tolling in a given context is consonant with the legislative scheme." 414 U.S. at 557-558.[8]

[8] A more detailed analysis of the legislative scheme that includes this Court's authority to entertain class actions and the procedure for doing so is set forth below in Section 1(C).

### C. Class Actions in This Court Have the Force of Law

The ultimate issue before the Court is whether American Pipe tolling is "consonant with the legislative scheme" set forth in the Tucker Act.[9] In *Stone Container Corp. V. United States,* 229 F.3d 1345 (Fed. Cir. 2000), the Federal Circuit held that *American Pipe* was not equitable tolling, but reached that conclusion based on an analysis of the Enabling Act under which RCFC 23 was promulgated. Whatever the reason the Court made that analysis, it is not the only analysis that can be made or has been made in this regard.

The Supreme Court in *American Pipe* itself made a similar analysis of the rulemaking power of (in that case) district courts. Instead of focusing on the submission to Congress clause of the Rules Enabling Act, the *American Pipe* Court focused on the scope of the rules clause. 414 U.S. at 556 n. 26 ("The Enabling Act empowering the Supreme Court to promulgate rules of procedure commands that '(s)uch rules shall not abridge, enlarge or modify any substantive right . . . .' 28 U.S.C. s 2072."). In *American Pipe*, the Court expressly held that tolling a statute of repose for putative class members did not abridge, enlarge or modify any substantive right. 414 U.S. at 558 n. 29.

Rules of this Court, which are promulgated under 28 U.S.C. § 2071, are required to be consistent with Acts of Congress and rules adopted by the Supreme Court under § 2072. 28 U.S.C. § 2071(a). Logic, therefore, leads to the conclusion that applying *American Pipe* tolling in this Court, in the same way the Supreme Court has applied it in district courts, is consistent with Acts of Congress and the procedural rules promulgated by the Supreme Court. Although the Court in *Stone Container* may have resorted to an alternative analysis for greater comfort,

[9] Amicus Pacific Legal Foundation submitted a brief in *John R. Sand*, challenging the notion that there is "sovereign immunity" (and by extension a waiver limited by time) when a claim is made under a constitutional protection such as the Just Compensation Clause. *See John R. Sand & Gravel Co. v. United States*, 2007 WL 2259869 (August 3, 2007) Brief Amicus Curiae of Pacific Legal Foundation in Support of Petitioner. This position makes sense, and was not mentioned by the Supreme Court in its opinion.

there can be no doubt that the *American Pipe* rules analysis is as valid and leads to the conclusion that *American Pipe* tolling is consistent with Acts of Congress and applies in this Court.

It is not necessary, however, to resort to a rules analysis to come to the correct conclusion. All of the rules being discussed, whether in the district courts or this Court, are procedural rules. The ability to entertain class actions is not rooted in whether or how a particular rule was adopted. Indeed, the authority to entertain class actions pre-dates all such rules.

In 1891, not long after initial passage of the Tucker Act (in 1887), this Court entertained its first class action, which was ultimately approved by the Supreme Court. In *Western Cherokee Indians v. United States*, 27 Ct.Cl. 1 (1891), the Court allowed several members of the Western Cherokees to sue on behalf of all members of the tribe for certain benefits they alleged to be due from the Government. On appeal, the Supreme Court affirmed *sub nom* the authority of this Court to hear such class actions:

> It was said in *Smith v. Swormstedt*, 16 How. 288, 302, 303, that 'the rule is well established that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and all the others;' but that 'in all cases where exceptions to the general rule are allowed, and a few are permitted to sue or defend on behalf of the many, by representation, care must be taken that persons are brought on the record fairly representing the interest or right involved, so that it may be fully and honestly tried.'
>
> * * *
>
> ***We approve of this disposition of the matter as just and appropriate under the circumstances, and a competent exercise of judicial power.***

*United States v. Old Settlers*, 148 U.S. 427, 480 (1893)(emphasis supplied).

Since 1893, this Court has heard numerous class actions. *See e.g. Menominee Tribe of Indians v. United States*, 388 F.2d 998, 179 Ct.Cl. 496 (1967), *aff'd* 391 U.S. 404, 88 S.Ct. 496 (1968); *Klamath and Modoc Tribes v. United States*, 174 Ct.Cl. 483 (1966). In the landmark decision in 1972, *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 453 F.2d 1272 (1972), the Court expressly acknowledged that it had long held authority to entertain class actions, despite the fact that: (1) the Court had the authority to adopt a comprehensive rule regarding class actions, and (2) it had declined to adopt such a rule (similar to Rule 23 of the Federal Rules of Civil Procedure). 453 F.2d at 1274-75. It is beyond dispute that this Court has a long history of hearing class actions, pre-dating RCFC 23 by nearly 100 years.

Since the time this Court began entertaining class actions and passage of the Tucker Act in 1887, it (the Tucker Act) has been amended numerous times.[10] On each occasion, Congress could have modified the Court's jurisdiction to prevent the Court from hearing class actions against the Government. It did not do so. Moreover, the passage of the Federal Courts Improvement Act of 1982 (Pub.L. 97-164, 96 Stat. 25) enacted a radical change by abolishing the old United States Court of Claims and creating in its place the United States Claims Court and United States Court of Appeals for the Federal Circuit. This was approximately 8 years after the Supreme Court's decision in *American Pipe*. Subsequently, with passage of the Federal Courts Administration Act of 1992 (Pub.L. 102-572, 106 Stat. 4506), the Court's name was changed to its present United States Court of Federal Claims. This amendment was approximately 4 years after this Court applied *American Pipe* tolling in *Barbieri v. United States*, 15 Cl.Ct. 747 (1988). Given these amendments, including the recent substantial amendments,

[10] June 25, 1948, 62 Stat. 940; July 28, 1953, 67 Stat. 226; September 3, 1954, 68 Stat. 1241; July 23, 1970, Pub.L. 91-350, 84 Stat. 449; August 29, 1972, Pub.L. 92-415, 86 Stat. 652; November 1, 1978, Pub.L. 95-563, 92 Stat. 2391; October 10, 1980, Pub.L. 96-417, 94 Stat. 1743; April 2, 1982, Pub.L. 97-164, 96 Stat. 39; October 29, 1992, Pub.L. 102-572, 106 Stat. 4516, 4519; October 19, 1996, Pub.L. 104-320, 110 Stat. 3874.

there can be no doubt that Congress has implicitly authorized this Court to hear class actions, with or without consideration of any rule of procedure, or how such a rule was adopted. It is this authority that was the crux of the Supreme Court's analysis in *American Pipe*. The ability to hear class actions would be rendered meaningless if all putative class members could not rely on the class suit to preserve their rights. 414 U.S. at 550-51.

The same rationale must apply in this Court. Congress has long recognized and acquiesced in this Court's authority to hear class actions. If that authority is to have any meaning, the period of limitations must be tolled by the filing of a class complaint. This is the only conclusion that gives meaning to Congress' decision to allow this Court to hear class actions. It is consistent with the legislative scheme, just as the Court in *American Pipe* held. .

One unique aspect of the Tucker Act makes this point absolutely clear. The Tucker Act provides for dual jurisdiction between this Court and district courts for claims against the Government under $10,000. The same case, based on the same facts, involving the same parties, and the same waiver of sovereign immunity including the same 6-year time limit, could result in two opposite results in respect of cases filed after a class complaint had failed of certification. A pure rules analysis as presently advocated by the Government would produce that result. It is hard to believe that was Congress' intention when it passed and amended the Tucker Act.

**2.**

**"Evidence" of Prejudice is Untimely**

The Government has moved for summary judgment on the defense of laches. In their opposition, Plaintiffs pointed out that the Government bears the burden of proving the elements of a laches defense, including that it has been prejudiced by the delay. Plaintiffs also pointed out

that the Government had offered no evidence to support any of the elements of laches and specifically no evidence of prejudice.

In an effort to save its argument, the Government offers as "evidence" of prejudice that three witnesses, Captain Thomas F. Keeley, Captain Mark Benson, and Captain Mark Clemente, retired from military service and "it is far from clear whether they will be available to assist in further litigation." The Government also speculates that access to other military witnesses may be "extremely difficult" given the "nature of military service and the current global demands." Reply at p. 19. This offer suffers from several defects.

First, it is improper to submit facts for purposes of summary judgment for the first time in a reply brief. *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000)(stating that it "robs the appellee of the opportunity to demonstrate that the record does not support an appellant's factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result."). Second, this "evidence" does not comply with the requirements for presenting facts that are not in dispute for purposes of RCFC 56. Such facts must be submitted under oath on personal knowledge. RCFC 56(e)("[S]upporting and opposing affidavits shall be made on personal knowledge."). Third, the evidence lacks any specificity. A party must present more than conclusory non-specific allegations to support a motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). On these grounds alone, the motion for summary judgment must fail.

Even without these procedural shortcomings, the motion must ultimately fail because the Government has not been prejudiced. Captains Keeley, Benson and Clemente were identified as witnesses in the *Testwuide* trial. Each of them has been deposed and their testimony has been

preserved. Even if they proved unavailable for another trial, the parties have the means to submit their testimony to the Court.

It is a fact of litigation that witnesses die, move away or disappear. Any number of other things can happen: that is just a fact of life. Absent something extraordinary – much more than has been alleged here – these circumstances do not rise to the level of prejudice that would justify the application of laches

**CONCLUSION**

For the reasons stated in this sur-reply and in the memorandum in opposition to Defendant's motion, the Court should deny the Defendant's motion.

Respectfully submitted,

Date: February 22, 2008

/s/Martin E. Wolf

Martin E. Wolf
Quinn, Gordon & Wolf, Chtd.
102 West Pennsylvania Avenue
Suite 402
Towson, MD 21204
(410) 825-2300
(410) 825-0066 fax
mwolf@quinnlaw.com

Attorney of Record for
Plaintiffs pursuant to
Rule 83.1(c)(1)

Of counsel:

Kieron F. Quinn
Cory L. Zajdel
Quinn, Gordon & Wolf, Chtd.
102 W. Pennsylvania Avenue
Suite 402
Towson, Maryland 21204
(410) 825-2300
kfquinn@quinnlaw.com
czajdel@quinnlaw.com

Kristen D. Hofheimer
Charles R. Hofheimer
Jack E. Ferrebee
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
khofheimer@hoflaw.com
chofheimer@hoflaw.com
jferrebee@hoflaw.com

Thomas Shuttleworth
Stephen C. Swain
Charles Lustig
Shuttleworth, Ruloff, Swain, Haddad & Morecock
4525 South Boulevard, Suite 300
Virginia Beach, Virginia 23452
(757) 671-6000
tshuttleworth@srgslaw.com
scswain@srgslaw.com
clustig@srgslaw.com